**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DTND SIERRA INVESTMENTS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-12-CV-1014-XR |
| | § | |
| THE BANK OF NEW YORK MELLON | § | |
| TRUST COMPANY, N.A., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this day the Court considered Defendant Bank of New York Mellon Trust Company

National Association's ("BONY") motion to dismiss (Doc. No. 11). For the following reasons,

the Court GRANTS the motion.

**I.**

**A. Factual Background[1]**

On or about April 4, 2003, Lee and Patricia Huntley executed a promissory note (the

"Note") to procure a loan for the purchase of 1802 Three Forks, San Antonio, Texas 78258 (the

"Property"). The Note was made payable to SouthTrust Mortgage Corporation. At the same time,

the Huntleys executed a deed of trust ("the Deed of Trust"), granting a lien on the Property. The

Property was described in the Deed of Trust by reference to its street address only. SouthTrust

Mortgage Corporation's interest in the Note and Deed of Trust was thereafter assigned to

JPMorgan Chase Bank, as Trustee ("JPMorgan") on or about April 5, 2003.

---

[1] The following factual background summary is predicated on facts alleged in Plaintiff's first amended complaint and Defendant's instant motion to dismiss.

Based upon "information and belief," Plaintiff alleges that on or about January 1, 2004, the Huntleys defaulted on their obligations under the Deed of Trust.[2] Around the same time, the Huntleys also defaulted on the payment of Property assessments imposed by the 281 East Homeowners Association (the "HOA"). On December 7, 2004, the HOA conducted a foreclosure sale of the Property. At this sale, the HOA purchased the Property. Subsequently, on July 19, 2005, a certified copy of the Deed of Trust was filed with the property description that was omitted from the recording in 2003.

On or about June 28, 2010, JPMorgan assigned its interest in the Note and Deed of Trust to Defendant. On June 30, 2011, Plaintiff purchased the Property from the HOA and recorded the special warranty deed. Thereafter, on January 3, 2012, Defendant foreclosed on the Property with Deborah Martin acting as substitute trustee. Defendant purchased the Property at the substitute trustee's sale. As a result, Plaintiff alleges that Defendant "currently seeks to wrest possession of the Property from Plaintiff's tenants."

**B. Procedural Background**

Plaintiff filed its original "Suit to Remove Cloud and Quiet Title, Petition for Declaratory Relief and Damages, and Application for Temporary Restraining Order" in Bexar County District Court on October 1, 2012. In that petition, Plaintiff sought to declare invalid the Substitute Trustee's Deed and asserted claims against Defendants BONY, Cathy Goodwin, Patricia Huntley, and Lee Huntley.

Defendant removed the case to this Court on October 23, 2012, asserting diversity jurisdiction because Plaintiff is a citizen of Texas and BONY is a citizen of California. Although Cathy Goodwin and the Huntleys are also citizens of Texas, this Court concluded that because

---

[2] The factual background provided in Defendant's instant motion to dismiss conflicts with Plaintiff's allegation that the default occurred in January of 2004. According to Defendant, the Huntleys defaulted under the Deed of Trust in July of 2008. *See* Mot. Dismiss at 4.

these Defendants were improperly joined at the time of removal, their citizenship is disregarded for determining whether removal was proper.[3] Accordingly, this Court had diversity jurisdiction at the time of removal and this was not destroyed by Plaintiff's post-removal amendment to its complaint with regard to Cathy Goodwin.[4] Further, because Cathy Goodwin and the Huntleys were ruled to be improperly joined, these Defendants were effectively dismissed from the action. *Akerblom v. Ezra Holdings Ltd.*, No. 12-20182, 2013 WL 363112, at *7 (5th Cir. Jan. 28, 2013) (per curiam).[5]

Along with its notice of removal, Defendant filed a motion to dismiss Plaintiff's original complaint on October 23, 2012. Plaintiff then filed an Amended Complaint on November 14, 2012 and in response Defendant filed the instant motion to dismiss. In Plaintiff's amended complaint, Plaintiff asserts that it seeks to "invalidate the lien and Substitute Trustee's Deed filed on February 9, 2012 and quiet Plaintiff's title" because Defendant's lien was not perfected prior to the HOA foreclosure, Defendant's claims to the Property under the Deed of Trust are barred by the statute of limitations, and Plaintiff has obtained the Property through adverse possession. Plaintiff also seeks declaratory and injunctive relief and asserts a violation of the Texas Debt Collection Practices Act.

## II.

### A. Legal Standard for Deciding a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[3] Order Denying Motion to Remand (Doc. No. 16) at 11.
[4] *Id.*
[5] The Court held that Plaintiff's amended complaint did not affect its jurisdiction because the improperly joined Defendants were not to be considered for purposes of jurisdiction. At the time, the Court did not expressly dismiss those Defendants, but its order denying remand effectively did so. To the extent the amended complaint could be construed as a motion to join non-diverse parties, the Court has considered the *Hensgens* factors and denies such joinder.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

## B. Documents That May Be Considered

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)) (holding that while the court generally must not go outside the pleadings, the court may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.). In attaching documents to a motion to dismiss that are referred to in the

plaintiff's complaint and are central to her claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Whether the plaintiff has objected to the court's consideration of documents external to the complaint may be a factor that can be taken into account in determining whether to consider the documents. *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99) ("The fact that the plaintiffs did not object to, or appeal, the district court's consideration of [documents attached to a motion to dismiss] was central to [the Fifth Circuit's] approval of that practice."). The district court may also take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

In this case, Defendant attached several documents to its motion to dismiss, including a copy of the Deed of Trust and the assignment document from JPMorgan to Defendant executed in 2010. Each of these documents is central to Plaintiff's claims and is referenced throughout the original petition. The Court also takes judicial notice of the Deed of Trust and the assignment document because they have been recorded and are therefore matters of public record. Other matters of public record of which the Court takes judicial notice include: (1) the Substitute Trustee's Deed executed February 3, 2010; and (2) two notices of acceleration rescission executed on May 7, 2009, and June 1, 2010 respectively.

## III.

### A. Plaintiff's Claim to Quiet Title

#### 1. Legal Standard for Establishing a Claim to Quiet Title

"The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)

(quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey*, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Johnson v. Williams*, No. 01-05-00445-CV, 2006 WL 1653656, at *4 (Tex. App.—Houston [1st Dist.] June 15, 2006, pet. denied) (mem. op.)).

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "In other words, the purpose of a suit to quiet title is to invalidate the defendant's claim to title." *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.) (mem. op.). Nonetheless, the plaintiff still "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531.

To prevail on a claim to quiet title, a plaintiff must establish that the defendant: (1) created a hindrance to the plaintiff's title, having the appearance of a better right to title than his own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *Ellis*, 2012 WL 3528009, at *3.

Here, Plaintiff's first amended complaint states that Defendant's claim to title is invalid because: (1) the assignment of the Deed of Trust from JPMorgan to Defendant is invalid, (2) Defendant's lien was not perfected prior to the HOA foreclosure in 2004 and was therefore

rendered subordinate at that time, (3) the statute of limitations bars Defendant's claim to the Property, and (4) Plaintiff obtained the Property through adverse possession. Defendant claims to have acted upon a right to foreclose on the Property pursuant to the Deed of Trust. This alleged right to foreclose and resulting foreclosure constitute a "cloud" because they affect Plaintiff's legal title to the Property.[6] Thus, Plaintiff's challenge to Defendant's foreclosure of, and claim to, the Property satisfies the elements of a cause of action to quiet title.

However, although Plaintiff's allegations satisfy the elements of a claim to quiet title, Defendant nonetheless argues that Plaintiff's quiet title claim should be dismissed because it is premised on arguments that fail as a matter of law.

### 2. Whether Plaintiff has Standing to Contest the Validity of the 2010 Assignment of the Deed of Trust

Defendant urges this Court to reject Plaintiff's initial challenge regarding the validity of the 2010 assignment by adopting the rule that a third party has no standing to contest the assignment of an instrument to which he is a stranger.[7] However, this Court has recognized that Texas law permits a third party to challenge an assignment on a ground that renders the assignment void or invalid, but a third party may not challenge an assignment on a ground that renders the assignment merely voidable. *See Venegas v. U.S. Bank, Nat'l Ass'n*, Civ. A. No. SA-12-CV-1123-XR, 2013 U.S. Dist. LEXIS 66000, at *13-14 (W.D. Tex. May 9, 2013); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.). This conclusion was recently affirmed by the Fifth Circuit. *See Reinagel v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 WL 3480207 (5th Cir. July 11, 2013). Accordingly, to determine

---

[6] *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (stating that "[f]oreclosure transfers title … to another party").
[7] Mot. Dismiss at 1.

whether Plaintiff has standing to contest the validity of the assignment in this case, the Court must consider the nature of Plaintiff's challenge.

### i. Plaintiff's Argument that the Assignment was Unauthorized and Fraudulent

In its amended complaint, Plaintiff alleges that Sandy Boughton did not have authority to execute the assignment of the Deed of Trust on behalf of JPMorgan.[8] Plaintiff further alleges that the assignment is fraudulent because although it purports that Ms. Boughton appeared personally, her signature and the document's notarization occurred in two different places at two different times.[9]

Under Texas law, a forged deed is void. *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 601 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A deed procured by fraud, however, is voidable only at the election of the grantor and is valid until there has been a successful suit to set it aside. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (citing *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976)). At common law, forgery was defined as "the making or altering of a written instrument purporting to be the act of another." *Nobles*, 533 S.W.2d at 925-26 (internal quotation marks omitted). In light of this definition, the Texas Supreme Court has held that "one who signs his true name, and does not represent himself to be someone else of the same name, does not commit forgery because his act does not purport to be that of another." *Id.* at 926. "The rule is also clear that one who signs his true name, purporting to act as the agent of another, has not committed a forgery." *Id.* Thus, although an agent who executes a document without authority may be culpable of fraud because he has induced confidence in an agency that does not exist, the agent has not committed a forgery, and

---

[8] Am. Compl. at 7.
[9] *Id.*

the document is not void, if he has executed the document purporting on its face to be executed by him as an agent. *Id.*

Here, Plaintiff's allegation that Sandy Boughton did not have the authority to execute the 2010 assignment, if true, would suggest that the assignment is merely voidable. *See Reinagel*, 2013 WL 3480207, at \*4. Likewise, Plaintiff's allegation that the document is fraudulent because Ms. Boughton did not appear personally before the notary public, if true, would suggest that the assignment is voidable rather than void. *See id.* Accordingly, Plaintiff does not have standing to contest the assignment on these grounds. *Id.* Plaintiff's argument that Defendant does not have authority to foreclose on the Property because Defendant was not validly assigned the Deed of Trust is therefore unable to support Plaintiff's cause of action to quiet title.

### 3. Whether Defendant's Lien was Perfected Prior to the 2004 HOA Foreclosure

Plaintiff next alleges that Defendant's predecessor originally filed the Deed of Trust "without a legal description" in 2003.[10] As a result of this alleged failure, Plaintiff contends that the document was invalid at the time of the HOA foreclosure in 2004, thereby rendering Defendant's lien junior to the HOA foreclosure.[11]

In Texas, a deed of trust transaction has been described as "a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance." *Riner v. Neumann*, 353 S.W.3d 312, 318 (Tex. App.—Dallas 2011, no pet.) (citing *Lucky Homes, Inc. v. Tarrant Savings Ass'n*, 379 S.W.2d 386, 388 (Tex. Civ. App.—Fort Worth 1964), *rev'd on other grounds*, 390 S.W.2d 473 (Tex. 1965)). Accordingly, Texas courts have viewed a deed of trust as a mortgage with the power to sell the property on default. *See, e.g.*, *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973); *Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex. App.—Austin 1996, no writ); *In re*

---

[10] Am. Compl. at 4.
[11] *Id.* at 4-5.

*Perry*, 425 B.R. 323, 380 (Bankr. S.D. Tex. 2010). Construing a deed of trust as a form of conveyance finds further support in *Black's Law Dictionary*, which defines the term as "[a] deed conveying title to real property to a trustee as security." BLACK'S LAW DICTIONARY (9th ed. 2009).

It is important to note, however, that Texas is a lien theory state, rather than a title theory state. *See Flag-Redfern Oil Co. v. Humble Exploration Co., Inc.*, 744 S.W.2d 6, 8 (Tex. 1987). Under the lien theory, a deed of trust does not convey legal title to the property; rather it conveys an interest in the subject property in the form of equitable title. *See id.* In other words, by executing a deed of trust, a debtor conveys the equitable title to the subject property while retaining the legal title. *Leighton v. Leighton*, 921 S.W.2d 365, 368 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Olivares v. Birdie L. Nix Trust*, 126 S.W.3d 242, 246 (Tex. App.—San Antonio 2003, pet. denied).

Since the execution of a deed of trust constitutes a conveyance of equitable title, the general rules in Texas regarding the sufficiency of the required property description apply. For the description to be sufficient, "the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 648 (Tex. 2008) (citing *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)). So long as the writing furnishes the data to identify the subject property with reasonable certainty it need not contain a metes and bounds description to be enforceable. *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996). Further, if enough appears in the property description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient. *Dittman v. Cerone*, No. 13-11-00196-CV, 2013 Tex. App. LEXIS 2343, at *4 (Tex. App.—Corpus Christi Mar. 7, 2013, no pet.) (mem.

10

op.) (citing *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 237 (Tex. App.—Dallas 2004, pet. denied)). Accordingly, under Texas law a street address can serve as a sufficient description so long as it does not give rise to confusion in identifying the subject property. *Patterson v. Fed. Deposit Ins. Corp.*, 918 F.2d 540, 546 (5th Cir. 1990); *Apex Fin. Corp.*, 155 S.W.3d at 237.

Here, the Property is a home located in a residential neighborhood. It therefore appears that given the address as was provided when the Deed of Trust was originally filed, a person familiar with the area could locate the Property with a reasonable degree of certainty. *See Dittman*, 2013 Tex. App. LEXIS 2343, at *4. Further, Plaintiff has presented no factual allegations in its amended complaint that the description of the Property provided in the Deed of Trust as recorded in 2003 created confusion. Plaintiff makes no allegations that there is more than one tract of land fitting the description in the Deed of Trust, or that the Property cannot be located with reasonable certainty. *See May v. Buck*, 375 S.W.3d 569, 575 (Tex. App.—Dallas 2012, no pet.). Rather, Plaintiff's contention regarding the allegedly deficient description appears to hinge upon the conclusion that a street address does not constitute the "full and proper" description required for the instrument's validity.[12] However, as noted above, a street address has been deemed a sufficient description under Texas law, reflecting the principle that a writing conveying property need not contain the specificity of a metes and bounds description to be enforceable. *See Patterson*, 918 F.2d at 546; *Tex. Builders*, 928 S.W.2d at 481.

Since Plaintiff has failed to allege that the Deed of Trust's initial description does not furnish the means by which the land can be identified with reasonable certainty, the Court concludes that Plaintiff has failed to provide a sufficient factual basis for the theory that the Deed of Trust was invalid when originally filed. Because Plaintiff's argument that Defendant's lien was made subordinate to the 2004 HOA foreclosure is contingent upon the invalidity of the Deed

---

[12] Am. Compl. at 4.

of Trust when first filed, in turn the Court concludes that this argument is unable to support Plaintiff's cause of action to quiet title.

### 4. Whether the Statute of Limitations Bars Defendant's Claim to the Property

In Plaintiff's third argument in support of its quiet title action, Plaintiff contends that Defendant's foreclosure of the Property in 2012 was barred by the statute of limitations in section 16.035(d) of the Texas Civil Practice and Remedies Code. Plaintiff's argument appears to rely upon the contention that the Note was accelerated "more than four years from the date the property was foreclosed upon" by Defendant.[13] Plaintiff argues that the applicable statute of limitations began to run at that point, and that as a result the power of sale in the Deed of Trust was void and Defendant's foreclosure was time-barred.

In Texas, "[a] sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(a). When a note is payable in installments and is secured by a real property lien, "the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* at § 16.035(e). "On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void." *Id.* at § 16.035(d).

If a deed of trust contains an optional acceleration clause, default does not "ipso facto start limitations running on the note." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Rather, the cause of action accrues only when the holder actually exercises its option to accelerate. *Id.* Further, a note holder who exercises the option to accelerate may abandon the acceleration if he continues to accept payments without exacting any of his available remedies upon the declared maturity. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex.

---

[13] Am. Compl. at 5.

App.—Houston [1st Dist.] 2012, no pet.) (citing *Holy Cross*, 44 S.W.3d at 566-67). Acceleration may also be abandoned by agreement or by other action of the parties. *Id.* Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date. *See id.*; *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ).

Here, the Note is payable in periodic installments and thus Section 16.035(e) of the Texas Civil Practice and Remedies Code is implicated.[14] Accordingly, in the absence of any acceleration, the four-year statute of limitations would not begin to run until the Note's maturity date of April 1, 2033.[15] Although Plaintiff contends that the Note was accelerated more than four years before Defendant's foreclosure, this argument fails to reach the required level of plausibility.

Plaintiff appears to argue that the 2004 HOA foreclosure sale automatically accelerated the Note and began the statute of limitations. Plaintiff alleges that the HOA foreclosure sale occurred on December 7, 2004, and thus BONY or its predecessor had to foreclose no later than December 8, 2008. However, section 18 states that if "any [i]nterest in the Property is sold or transferred … without Lender's prior written consent, Lender *may* require immediate payment in full of all sums secured" by the Deed of Trust.[16] Therefore, acceleration would occur only at the Lender's option, and limitations would not begin to run unless the Lender actually accelerated the Note. *Khan*, 371 S.W.3d at 353. Plaintiff does not plead that the Lender accelerated the Note under section 18. Therefore, Plaintiff has not pled sufficient facts to establish that the loan was accelerated under section 18, and Plaintiff's assertion that the homeowners could not reinstate a Note that has been accelerated under section 18 is irrelevant.

---

[14] Deed of Trust at 1.
[15] *See Id.*; TEX. CIV. PRAC. & REM. CODE § 16.035(e).
[16] Deed of Trust at 8 (emphasis added).

Plaintiff also pleads "on information and belief" that the Note was accelerated two or more times since 2005." Am. Compl. At 3.  However, Plaintiff has not provided any factual support regarding when this acceleration that allegedly serves to bar Defendant's foreclosure actually occurred. Plaintiff's Amended Complaint merely asserts that a notice of acceleration was "filed with the real property records more than four years from the date of the foreclosure."[17] Plaintiff's allegations in this regard are insufficient to state a plausible claim to relief.

BONY admits that it accelerated the Note due to default in 2009 and 2010, and states that notices of rescission for these accelerations were recorded (and the Court has taken judicial notice of these notices).  Each rescission, the earlier of which was executed on May 7, 2009, puts the Note and Deed of Trust "in effect in accordance with their original terms and conditions, as though no acceleration took place."[18] Thus, Plaintiff's claim that an earlier acceleration remained effective to run the statute of limitations is implausible.  *See also Khan*, 371 S.W.3d at 353 (noting that acceleration can be abandoned and has the effect of restoring the contract to its original condition, including restoring the note's original maturity date).  In addition, Plaintiff's assertion that the homeowners could not cure the default after the HOA foreclosed lacks merit. The fact that the HOA foreclosed on the Property would not prevent the homeowners from paying the amounts due under the Note.

Overall, the Court concludes that Plaintiff has not made adequate factual allegations to allow for the reasonable inference that an acceleration of the Note took place at some point more than four years prior to Defendant's foreclosure and remained effective to maintain the statute of limitations. Accordingly, Plaintiff's argument that Defendant's foreclosure was time-barred by

---

[17] Am. Compl. at 5.
[18] *Id.*

the statute of limitations stops short of the line between possibility and plausibility and therefore is unable to support Plaintiff's cause of action to quiet title. *See Iqbal*, 556 U.S. at 678.

### 5. Whether Plaintiff Has Acquired Title through Adverse Possession

In Plaintiff's final argument in support of its cause of action to quiet title, Plaintiff contends that it and the HOA adversely possessed the Property for the requisite number of years, and thus Defendant's act of foreclosure was barred.[19] On this basis, Plaintiff argues that any rights Defendant may have had in the Property were divested once Plaintiff adversely possessed the Property for a sufficient period of time.

In Texas, "adverse possession" means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1). "To satisfy the applicable limitations period, peaceable and adverse possession need not continue in the same person, but there must be privity of estate between each holder and his successor." *Id.* at § 16.023. Peaceable possession is defined as possession that is continuous and uninterrupted by an adverse suit to recover the property. *Id.* at § 16.021(3). In sum, to support a claim of adverse possession courts in Texas have required the possession to be: actual, visible, continuous for the applicable period, notorious, distinct, hostile, and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the property. *See, e.g.*, *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990)).

Here, Plaintiff's claim of adverse possession, as a basis for Plaintiff's action to quiet title, fails to meet the pleading standards required to overcome a Rule 12(b)(6) motion. In its entirety, Plaintiff's argument regarding adverse possession in the amended complaint is as follows:

---

[19] *See* Am. Compl. at 6.

15

The Plaintiff will show that there was a visible appropriation and possession of the land in questions [*sic*], sufficient to give notice to the record title holder that was peaceable, under a claim of right hostile to the title holder's claim, and that continued for the duration specified in the applicable statute. In this case, the Plaintiff avers that by way of the Deed Following HOA foreclosure sale, the Plaintiff had title or color of title for at least 7 years. The Defendant in this case did not act to retake the property within the proscribed 3 or 5 year period, and therefore, the Plaintiff is the property owner in fee simple.

The Plaintiff avers that both it and the HOA maintained an actual and visual appropriation of the property claimed under a right of title that was hostile to the claims of the Defendant. Both the HOA and the Plaintiff recorded deeds showing that they were the owners of the property. From that point on, the original owners had no further rights vested in the property. The HOA actually and visible [*sic*] possessed the property and did so through several overt acts. Moreover, the Plaintiff possessed the property through several overt acts including the filing of a forcible entry and detainer action.[20]

In addition, Plaintiff alleges acts of possession including purchasing the Property and satisfying any HOA dues owed.[21] Finally, Plaintiff alleges that neither Defendant nor its predecessor attempted to gain, or successfully did gain, access to the Property during the applicable limitations period.[22]

As noted above, Plaintiff has failed to present a plausible argument that the Defendant's lien on the Property was made junior to the HOA foreclosure in 2004. Further, under Texas common law, "foreclosure does not terminate interests in the foreclosed real estate that are senior to the lien being foreclosed, and the successful bidder at a junior lien foreclosure takes title subject to the prior liens." *DTND Sierra Invs. LLC v. Bank of Am., N.A.*, 871 F. Supp. 2d 567, 573 (W.D. Tex. 2012) (citing *Conversion Props., LLC v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied). Accordingly, both the HOA and Plaintiff took the Property subject to Defendant's Deed of Trust lien and their possession is consistent with, not adverse to, that interest. Plaintiff has thus failed to sufficiently plead an adverse possession claim, which

---

[20] Am. Compl. at 6.
[21] Pl.'s Resp. ¶ 8.
[22] *Id.*

requires a plausible showing of possession that is hostile to the party sought to be barred by the applicable statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.021(1); *Kazmir*, 288 S.W.3d at 561. The Court therefore finds that Plaintiff's adverse possession argument is unable to support Plaintiff's cause of action to quiet title.

### 6. Conclusion

Each of Plaintiff's arguments in support of the quiet title claim falls short of meeting the pleading standard requiring fact-based allegations sufficient to make a claim plausible on its face. *See Iqbal* 556 U.S. at 678. Accordingly, the Court concludes that Plaintiff's cause of action to quiet title is insufficiently pled to survive a Rule 12(b)(6) motion, and therefore Defendant's motion to dismiss is GRANTED with regard to this claim.

### B. Plaintiff's Texas Debt Collection Practices Act Claim

Plaintiff next alleges that Defendant's act of foreclosing on the Property was a violation of the Texas Debt Collection Practices Act ("TDCPA"). In asserting this claim, Plaintiff relies on the alleged fraudulent nature of the assignment of the Deed of Trust from JPMorgan to Defendant.[23] As discussed above, Plaintiff asserts that the assignment was fraudulent both in that Sandy Boughton did not have authority to execute the document as well as in the ambiguity surrounding the document's notarization.[24] Plaintiff therefore claims that Defendant made misrepresentations in the collection of a debt and in doing so violated section 392.304(a)(19) of the Texas Finance Code, which provides that a debt collector may not use false misrepresentations or deceptive means in debt collection. *See* TEX. FIN. CODE § 392.304(a)(19).

As discussed above, Plaintiff's allegations as to the fraudulent nature of the Deed of Trust assignment, if true, would suggest that the assignment is merely voidable rather than void. *See*

---

[23] Am. Compl. at 7.
[24] *Id.*

17

*Reinagel*, 2013 WL 3480207, at *4. Consequently, Plaintiff does not have standing to challenge the assignment on these grounds. *Id.*   Plaintiff's TDCPA claim is premised entirely on the challenge to the Deed of Trust, and seeks to challenge the validity of the foreclosure.  The Court concludes that Plaintiff cannot recast its challenge to the Deed of Trust assignment as a TDCPA claim.  Accordingly, Defendant's motion to dismiss is GRANTED with regard to Plaintiff's TDCPA cause of action.

## C. Plaintiff's Trespass to Real Property Claim

Plaintiff's cause of action for trespass is premised on the principle that Texas law does not permit self-help repossession actions with regard to real property.[25] Specifically, Plaintiff alleges that "Defendants, Cathy Goodwin and [BONY], entered onto property in the possessions [*sic*] of DTND and demanded possession through "self-help means and in contravention of a court order."[26]   In a separate section of the Amended Complaint, Plaintiff alleges that shortly after an order was issued halting all writs of possession and possession actions, Cathy Goodwin "approached DTND's tenants and told them that DTND never owned the property … and that they needed to leave the property immediately."[27]

As noted, Goodwin is no longer a party in this lawsuit.  Plaintiff's allegation that BONY entered the Property is conclusory and lacks sufficient factual detail to state a plausible claim. To the extent Plaintiff may be asserting that BONY is liable for Goodwin's conduct, which is not clearly alleged, Plaintiff has not alleged that Defendant aided, assisted, advised, or caused Cathy Goodwin to enter the Property and demand possession. *See Schievink*, 227 S.W.3d at 865. Accordingly, Defendant's motion to dismiss is GRANTED with regard to Plaintiff's cause of action for trespass to real property.

---

[25] Am. Compl. at 8.
[26] *Id.* at 8-9.
[27] *Id.* at 4.

18

**D. Plaintiff's Claim for Injunctive Relief**

Plaintiff's request for a temporary restraining order also fails. Plaintiff may not seek a temporary restraining order in a complaint. Pursuant to Local Rule CV-65, "[a]n application for a temporary restraining order … shall be made in an instrument separate from the complaint." Moreover, to obtain injunctive relief, a plaintiff must demonstrate among other things, a likelihood of success on his claims. *See Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001); *Harris Cnty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999). Because Plaintiff has not pleaded a single viable cause of action, he cannot make this showing and accordingly his request for injunctive relief is dismissed. *See Pajooh v. Harmon*, 82 F. App'x 898, 899 (5th Cir. 2003) (affirming the district court's denial of injunctive relief when the plaintiff failed to state a claim).

**E. Plaintiff's Claim for Declaratory Relief**

Finally, Plaintiff asserts a claim for declaratory judgment. Defendant argues that Plaintiff's request for declaratory relief should fail along with Plaintiff's other causes of action and also requests that the Court dismiss Plaintiff's claim for declaratory relief as redundant because the relief sought would add nothing to the suit already before the court.[28]

Declaratory relief is a procedural device for granting a remedy and does not create any substantive rights or causes of action. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Determining whether to award declaratory relief is a matter of district court discretion. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).

Since no claim asserted by Plaintiff has survived Defendant's motion to dismiss, Plaintiff's request for declaratory relief finds no support in any live cause of action. Because

---

[28] *See* Mot. Dismiss at 14-15.

Plaintiff has failed to bring any viable causes of action, the Court finds that Plaintiff's request for declaratory relief should be dismissed. *See Sid Richardson*, 99 F.3d at 752 n.3; *Venegas*, 2013 U.S. Dist. LEXIS 66000, at *25-26.

<u>**Conclusion**</u>

In light of the foregoing, the Court finds that Plaintiff has failed to state a claim to relief that is plausible on its face. Accordingly, Defendant's motion to dismiss (Doc. No. 11) is GRANTED. Plaintiff's claims are therefore DISMISSED on the merits.  The Clerk is directed to enter final judgment pursuant to Rule 58 and to close this case.  Defendant is awarded its costs of court and shall file a Bill of Costs pursuant to the Local Rules.

SIGNED this 26th day of July, 2013.


_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE